IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

KEVIN TERRANCE DAVIS                                              PLAINTIFF

v.                                                          No. 4:20CV55-RP

SUPERINTENDENT M. TURNER, ET AL.                                 DEFENDANTS

**MEMORANDUM OPINION**

This matter comes before the court on the *pro se* prisoner complaint of Kevin Terrance Davis, who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. The plaintiff has brought the instant case under 42 U.S.C. § 1983, which provides a federal cause of action against "[e]very person" who under color of state authority causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The plaintiff alleges that the defendants used excessive force in moving him to Unit 32 at the Mississippi State Penitentiary in Parchman, Mississippi. In addition, he alleges that the general conditions of confinement at Unit 32 and the Tallahatchie County Correctional Facility were unconstitutionally harsh. The defendants have moved for summary judgment, arguing, *inter alia*, that Mr. Davis did not exhaust prison administrative remedies before filing suit. The plaintiff has responded to the motion; the defendants have replied, and the matter is ripe for resolution. For the reasons set forth below, the motion by the defendants for summary judgment will be granted, and the instant case will be dismissed for failure to exhaust administrative remedies.

**Factual Allegations**

Kevin Terrance Davis has sued the Defendants for compensatory and punitive damages, alleging unconstitutional conditions of confinement while he was incarcerated in Mississippi State

Penitentiary ("MSP") Unit 32 from January 2, 2020, until January 15, 2020.[1]  Doc. 1 at 5 - 7.  He claims that on January 2, 2020, superintendent Marshall Turner, Deputy Warden Lee Simon, K-9 Commanders Williams, Spencer, and Clarke and the "Memphis State Troopers" entered Unit 29 C-Building, B-Zone, shooting shotguns in the air and cuffing the inmates, requiring them to lay down [CM/ECF Doc. 1] at PageID. 5.  Mr. Davis claims that he and other prisoners were moved to M.S.P. Unit 32 on January 2, 2020, where they remained until January 15, 2020.[2]  Doc. 1 at 7.

Mr. Davis claims that during his first three days in Unit 32, he ran out of drinking water and was denied bedding, sheets, and a mattress. [CM/ECF Doc. 1] at PageID. 6-7.[3]  He alleges that during his temporary stay in Unit 32 neither the water supply, lights, nor heat were operational.  Doc. 1 at 7.  He also alleges that he was not fed or given anything to drink for days, though he does not specify how long this lasted.  Doc. 1 at 7.  Mr. Davis has not alleged any physical injury; instead, he alleges only psychological and emotional distress, fearing that life in MDOC has taken its toll on him.  Doc. 1 at 7-8.

Mr. Davis filed a grievance by sending a letter to Commissioner Taylor dated February 8, 2020.  *See Pennington Affidavit*, attached as part of Composite Motion Exhibit "B" at MDOC-DAVIS 55-000001.  In his grievance, Mr. Davis requested compensatory and punitive damages from all

---

[1] MDOC Institutional Records show that he was moved to Unit 32 from Unit 29 at 3:43 p.m. on January 3, 2020.  He was then transferred to the Tallahatchie County Correctional Facility on January 12, 2020, at 2:47 a.m.  *See* Housing Location Excerpt from Plaintiff's Institutional Records, attached to the defendants' Motion as Exhibit "A."

[2] Mr. Davis does not reveal why he and other prisoners were temporarily moved to Unit 32. To clarify, MDOC moved Mr. Davis and other inmates to maintain safety during a statewide riot in which several inmates were killed.  *See e.g., Jarvis v. Hall*, 4:20-cv-00193-NBB-JMV Doc. 63.

[3] Mr. Davis is not consistent regarding the relevant time period.  He states that the poor conditions lasted for about six (6) nights.  Doc. 1 at 7.  However, he later claims that the conditions lasted for thirteen (13) days.  Doc. 1 at 7.

parties named, due to his experience in Unit 32. *Id*. at MDOC-DAVIS 55-000003 - 04. Commissioner Taylor forwarded the grievance to the ARP Program, where, upon receipt, Richard Pennington informed Mr. Davis in writing that he was required to follow ARP Policies and Procedures for submitting his grievance:

> Your correspondence to the Interim Commissioner Taylor has been forwarded to this office for a response.
>
> Any questions, concerns, complaints, or requests will be addressed according to ARP Policy and Procedure 20.08.01. It may be obtained by utilizing ILAP procedures at your facility. You will have (5) five days from receipt of this response to submit your issue through regular channels to the ILAP office at your housing facility for consideration.

*Id*. at MDOC-DAVIS 55-000002. Mr. Davis had sent his complaint as a letter to Commissioner Taylor, rather than through the grievance process outlined in MDOC Policies and Procedures (No. 20.08.01). Mr. Pennington informed him that he had five days from receipt of the letter to submit his grievance though the regular process. *Id*. There is no record that Mr. Davis resubmitted his grievance. *Id*. at MDOC-DAVIS 55-000001.

## Failure to Exhaust Administrative Remedies

The documents the parties have provided reveal that the plaintiff did not exhaust the prison grievance process before filing the instant suit. Congress enacted the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e *et seq*. – including its requirement that inmates exhaust their administrative remedies prior to filing suit – in an effort to address the large number of prisoner complaints filed in federal courts. *See Jones v. Bock*, 549 U.S. 199, 202 (2007). Congress meant for the exhaustion requirement to help weed out the frivolous claims from the colorable ones. *Jones v. Bock*, 549 U.S. 199, 203 (2007).

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a), requires prisoners to exhaust any available administrative remedies prior to filing suit under 42 U.S.C. §1983. The exhaustion requirement protects administrative agency authority, promotes efficiency, and produces "a useful record for subsequent judicial consideration." *Woodford v. Ngo*, 548 U.S.81, 89 (2006). A prisoner cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal" because "proper exhaustion of administrative remedies is necessary." *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006); see also *Johnson v. Ford*, 261 F. App'x 752, 755 (5th Cir. 2008)( the Fifth Circuit takes "a strict approach" to the PLRA's exhaustion requirement)(*citing Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003)); *Lane v. Harris Cty.Med.Dep't*, No. 06-20935, 2008 WL 116333, at *1 (5th Cir. Jan.11,2008)( under the PLRA, "the prisoner must not only pursue all available avenues of relief; he must also comply with all administrative deadlines and procedural rules"). Indeed, "a prisoner must now exhaust administrative remedies even where the relief sought – monetary damages – cannot be granted by the administrative process." *Booth v. Churner*, 532 U.S. 731, 739 (2001).

The requirement that claims be exhausted prior to the filing of a lawsuit is mandatory. *Gonzalez v. Seal*, 702 F.3d 785 (5th Cir.2012). "Whether a prisoner has exhausted administrative remedies is a mixed question of law and fact." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010). As "exhaustion is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time, . . . judges may resolve factual disputes concerning exhaustion without the participation of a jury." *Id*. at 272. The Supreme Court has also recognized the need for a prisoner to face a significant consequence for deviating from the prison grievance procedural rules:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievance complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . .

*Woodford* at 95.

Mississippi Code Annotated § 47-5-801 grants the Mississippi Department of Corrections the authority to adopt an administrative review procedure at each of its correctional facilities. Under this statutory authority, the Mississippi Department of Corrections has set up an Administrative Remedy Program ("ARP") through which an inmate may seek formal review of a grievance relating to any aspect of his incarceration. This court approved the ARP Program in *Gates v. Collier*, GC 71-6-S-D (N.D. Miss. Feb. 15, 1994). *See also Marshall v. Price*, 239 F.3d 365, 2000 WL 1741549, at *1 (5th Cir. Nov. 6, 2000). On September 19, 2010, the ARP process was changed from three steps to two. *See Gates v. Barbour*, No. 4:71CV6-JAD, Doc. 1242 (N.D. Miss. Aug. 19, 2010); *Threadgill v. Moore*, No. 3:10CV378-TSL-MTP, 2011 WL 4388832, at *3 n.6 (S.D. Miss. July 25, 2011).

The two-step ARP process begins when an inmate first submits his grievance in writing to the prison's Legal Claims Adjudicator within thirty days of the incident. *Howard v. Epps*, No. 5:12CV61-KS-MTP, 2013 WL 2367880, at *2 (S.D. Miss. May 29, 2013). The Adjudicator initially screens the grievance and determines whether or not to accept it into the ARP process. *Id*. The screening phase operates as a filter – applied before the formal grievance process begins – to remove procedurally defective or otherwise invalid grievances. As set forth above, a prisoner cannot satisfy the exhaustion requirement by filing a procedurally defective grievance or appeal. *Woodford, supra*. Hence, rejection of a grievance during the screening phase terminates the grievance – and does *not* count as

exhaustion of the grievance process. *See Seales v. Shaw*, No. 5:15-CV-59-KS-MTP, 2016 WL 616749, at *3 (S.D. Miss. Jan. 26, 2016), *report and recommendation adopted sub nom. Seales v. Wilkinson Cty. Corr. Facility*, No. 5:15-CV59-KS-MTP, 2016 WL 616385 (S.D. Miss. Feb. 16, 2016) (finding rejection during initial MDOC screening process not to constitute exhaustion); *Goldmon v. Epps*, No. 4:14-CV-0112-SA-SAA, 2015 WL 5022087, at *3 (N.D. Miss. Aug. 24, 2015) (same); *see also Robinson v. Wheeler*, 338 Fed. Appx. 437 (5th Cir. 2009) (per curiam) (not reported) (upholding Louisiana initial screening provision of prison grievance process). However, if the defects in the original grievance were minor ("technical" or "matters of form") an inmate may submit a corrected grievance within five days of the rejection:

> If a request is rejected for technical reasons or matters of form, the inmate shall have five days from the date of rejection to file his/her corrected grievance.

*See* https://www.mdoc.ms.gov/Inmate-Info/Documents/CHAPTER_VIII.pdf (last visited April 3, 2019)).

If accepted, the grievance is forwarded to the appropriate official who then issues a First Step Response to the complaining inmate. *Howard, supra*. If the inmate is unsatisfied with the first response, he may continue to the Second Step by completing an appropriate ARP form and sending it to the Legal Claims Adjudicator. *Id*. The Superintendent, Warden or Community Corrections Director will then issue a final ruling, or Second Step Response – which completes the ARP process. *Id*. Issuance of the Second Step Response is the only way to complete the grievance process. If the inmate is unsatisfied with that response, he may file suit in state or federal court. *Id*.

The Inmate Handbook requires that a grievance "present as many facts as possible to answer all the questions who, what, when, where, and how concerning the incident." *See Pinkton v. Jenkins*,

2019 WL 1089087, *3 (N.D. Miss. 2019). Although a plaintiff is "not required to present specific legal theories in his grievances, . . . he [is] required to provide facts and to alert prison officials of the problem in order to give them an opportunity to address it." *Johnson v. Johnson*, 385 F.3d 503, 517 (5th Cir. 2004). "[T]his portion of [MDOC's] ARP requires that all officials involved be named or at least referenced in description." *Holton v. Hogan*, 2018 WL 707544, *3 (S.D. Miss. 2018); *see also Pinkton*, 2019 WL 1089087 at *3 (dismissing claims against two defendants for failure to exhaust administrative remedies where plaintiff never filed grievance regarding the actions of the two defendants).

As set forth above, Mr. Davis filed a grievance by sending a letter to Commissioner Taylor dated February 8, 2020. *See* Pennington Affidavit, Composite Motion Exhibit "B" at MDOC-DAVIS 55-000001. In the grievance, he requested compensatory and punitive damages from all parties named based on the conditions at Unit 32. *Id*. at MDOC-DAVIS 55-000003 - 04. Commissioner Taylor forwarded the grievance letter to the ARP Program, where, upon receipt, Richard Pennington informed Mr. Davis in writing that he was required to follow ARP Policy and Procedure for submitting his grievance. *Id*. at MDOC-DAVIS 55-000002. Pennington informed Mr. Davis that he had five days from receipt of the letter to submit his issue though the proper channels. *Id*. There is no record that Mr. Davis resubmitted his grievance. *Id*. at MDOC-DAVIS 55-000001. As Mr. Davis did not complete the ARP process, he did not exhaust his administrative remedies and the instant case should be dismissed for that reason.

**Conclusion**

For the reasons set forth above, the motion by the defendants for summary judgment will be granted, and the instant case will be dismissed without prejudice for failure to exhaust administrative

remedies.[4]  A final judgment consistent with this memorandum opinion will issue today.

    **SO ORDERED**, this, the 14th day of April, 2022.

/s/ Roy Percy<br>
UNITED STATES MAGISTRATE JUDGE

---

[4] As dismissal for failure to exhaust applies equally to all defendants, defendant Donovan Clarke (who has been served with process but has not answered) will also be dismissed without prejudice from this case.  Where a defending party shows that a plaintiff has no cause of action, the defense also benefits an unserved or defaulting defendant.  *Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001).